**STATE OF HAWAI'I**, Plaintiff–Appellee, v. **ELSIE SANCHEZ**, Defendant–Appellant

NO. 15766

(CASE NO. C2: 10/15/91)

SEPTEMBER 28, 1992

BURNS, C.J., HEEN, AND WATANABE, JJ.

## OPINION OF THE COURT BY WATANABE, J.

In this appeal, we are being urged to reverse Defendant–Appellant Elsie Sanchez's (Defendant) conviction of Harassment, on three grounds. First, Defendant contends that the trial court plainly erred when it permitted an amended complaint to be filed against her two months before trial, changing the second count of the charges against her from Resisting Arrest, a misdemeanor, to Harassment, a petty misdemeanor. Defendant makes this contention despite the fact that her trial counsel agreed to said amendment and signed a written stipulation to that effect. Second, Defendant argues that the trial court erred in convicting her, since the court did not expressly find that she had harassed two police officers, as alleged in Count Two of the amended complaint. Finally, Defend-

ant alleges that there is insufficient evidence on the record to convict her of Harassment.

Finding no reversible error, we affirm the conviction.

## FACTS

As a result of an incident which occurred on May 31, 1991, in Kihei, Maui, Defendant was charged on July 17, 1991, by way of a complaint, with the offenses of Disorderly Conduct (Count One), a violation of Hawai'i Revised Statutes (HRS) § 711–1101(1)(a) and (b) (1985), and Resisting Arrest (Count Two), a violation of HRS § 710–1026(1) (1985). On August 27, 1991, pursuant to a written stipulated agreement signed by both the deputy prosecutor and Defendant's trial counsel, an amended complaint was filed, whereby Count Two, the Resisting Arrest charge, was amended to the offense of Harassment, a violation of HRS § 711–1106(1)(a) (1985).

On October 15, 1991, after a bench trial, the District Court of the Second Circuit convicted Defendant of Harassment and dismissed the Disorderly Conduct charge. Thereafter, the court sentenced Defendant to serve ten days in jail, pay a $250 fine, and perform 25 hours of community service. Defendant's jail sentence, however, was suspended for six months on the condition that she obey all laws and refrain from being arrested during that time.

This timely appeal followed.

## DISCUSSION
### I.

Defendant's first point on appeal is that the trial court erred, as a matter of law, when it permitted the amendment of the Resisting Arrest charge to Harassment, since such amendment violated Rule 7(f), Hawai'i Rules of Penal Procedure (HRPP). Rule 7(f) provides:

> **Amendment.** The court may permit a charge other than an indictment to be amended at any time before

verdict or finding if no additional or different offense is charged and if substantial rights of the defendant are not prejudiced.

In the instant case, the amended complaint was filed on August 27, 1991, and the trial was held on October 15, 1991; hence, the amendment occurred well before the "verdict or finding." Defendant has not argued that her substantial rights were in any way prejudiced by the amendment, and indeed it would be difficult for her to make such an argument since the amended complaint charged her with a lesser offense than the original complaint. Defendant asserts, however, that Harassment is not a lesser–included offense of Resisting Arrest, and therefore the amended complaint improperly charged her with a separate and "different" offense.

In support of her position, Defendant cites *State v. Woicek*, 63 Haw. 548, 632 P.2d 654 (1981). In *Woicek*, the Hawai'i Supreme Court held that the dispositive issue in determining whether an "additional or different offense is charged" for Rule 7(f) purposes, is whether the amended offense is a lesser–included offense of the original offense charged. Concluding that Harassment was not a lesser–included offense of Disorderly Conduct and was therefore "a separate and different offense," the court held that permitting the amendment of the original charge from Disorderly Conduct to Harassment, over the objection of the defendant's counsel, was improper and prejudicial. Accordingly, the court reversed the defendant's conviction. 63 Haw. at 552–53, 632 P.2d at 657.

The following year, in *State v. Whitley*, 65 Haw. 486, 654 P.2d 354 (1982), the Hawai'i Supreme Court similarly reversed a conviction, holding that the trial court erred in permitting an amendment of the original charge from Disorderly Conduct to Harassment, even though the defendant was not surprised by the amendment and was given the opportunity prior to trial to obtain a continuance. 65 Haw. at 487, 654 P.2d at 355.

Defendant requests that we similarly reverse her conviction on the ground that Harassment is not a lesser–included offense of Resisting Arrest and, accordingly, constitutes a separate and different offense for Rule 7(f) purposes.

However, we need not reach this threshold issue. The record clearly indicates that Defendant, through her trial counsel, not only entered into a stipulation, agreeing to have the charge amended, but further, never objected to the filing of the amended complaint, as she certainly could have done under Rule 12(b), HRPP, if she wished to preserve her objection. Defendant therefore waived any rights to attack the validity of the amended complaint on this issue. *Government of Canal Zone v. Burjan*, 596 F.2d 690 (5th Cir. 1979). *See also Dyson v. United States*, 485 A.2d 194 (App. D.C. 1984).

## II.

Count Two of the amended complaint accused and charged Defendant as follows:

> That on or about the 31st day of May, 1991, in the District of Wailuku, County of Maui, State of Hawai'i, ELSIE SANCHEZ did, with intent to harass, annoy, or alarm another person, strike, shove, kick or otherwise touch a person, to wit, *Sergeant Donald Cameron and Officer Leighton Kanaele*, in an offensive manner or subject them to offensive physical contacts, thereby committing the offense of Harassment in violation of Section 711–1106(1)(a) of the Hawai'i Revised Statutes. [Emphasis added.]

Defendant argues that there was insufficient evidence to convict her of Harassment since Count Two charges her with harassing two officers (Cameron and Kanaele) and the State conceded that the evidence was sufficient to prove that she harassed only Cameron. In other words, Defendant contends that a fatal variance

exists between the offenses charged in Count Two and the evidence adduced at trial. We disagree.

Rule 52(a), HRPP, specifically instructs that "[a]ny . . . variance which does not affect substantial rights shall be disregarded."

In *State v. Harper*, 1 Haw. App. 481, 486, 620 P.2d 1087, 1091 (1980), this court held that "[i]f there is a variance, the test for reversible error is whether it has affected substantial rights. If it has not, whatever variance exists is harmless error."

The Hawai'i Supreme Court has observed that:

> The purpose of an indictment is "to apprise the accused of the charges against him, so that he may adequately prepare his defense, and to describe the crime charged with sufficient specificity to enable him to protect against future jeopardy for the same offense."
>
> A variance is a disagreement between the allegations in the indictment and the proof of some matter that is legally relevant to the charge. *To be fatal, a variance must be both material to an essential element of the offense and prejudicial to a substantial right of the accused.*

*State v. Sword*, 68 Haw. 343, 345–46, 713 P.2d 432, 434 (1986) (emphasis added, citations omitted).

On numerous occasions, the supreme court has recognized that a conviction will not be set aside due to a variance between the evidence proved and the allegations in the indictment or information unless the variance is material. In *State v. Nases*, 65 Haw. 217, 218, 649 P.2d 1138, 1139 (1982), for example, the court held that in a prosecution for theft, so long as the unauthorized control over property of another is established, a variance in the identity of the owner of the property is not fatal and will be treated as surplusage. Similarly, in *State v. Pokini*, 45 Haw. 295, 367 P.2d 499 (1961), the court concluded that in a prosecution for robbery, the fact that the evidence at trial showed that the property taken from the person

of the victim was itself stolen property did not constitute a fatal variance from the indictment, which charged that the victim was the owner of the property. In *State v. Peters*, 44 Haw. 1, 352 P.2d 329 (1959), the indictment charged the defendant with taking the sum of $117 on December 8, 1957, but the evidence suggested that the sum of $230 may have been stolen, on a date sometime in November or December 1957. The supreme court concluded that "[t]here was no material variance, for the entire evidence related to the particular offense alleged in the indictment. The jury could not have been misled nor defendant prejudiced." 44 Haw. at 3–4, 352 P.2d at 331.

Against this backdrop, we review the variance between the allegations in Count Two and the evidence offered at trial.

Count Two of the amended complaint accused Defendant of "committing the offense of Harassment in violation of Section 711–1106(1)(a) of the Hawai'i Revised Statutes." HRS § 711–1106(1)(a) provides that:

> (1)   A person commits the offense of harassment if, with intent to harass, annoy, or alarm *another person*, he:
> (a)   strikes, shoves, kicks, or otherwise touches *a person* in an offensive manner or subjects him to offensive physical contact[.]   [Emphases added.]

Since, under HRS § 711–1106(1)(a), the offense of Harassment is committed against a singular person, Defendant was provided fair notice that she could be found guilty of Harassment if the State proved that she committed the offense against either police officer. Defendant has made no showing that she was in any way prejudiced by the duplicitous joining of two Harassment offenses in the same count. The State has conceded that there was no evidence of Harassment against Officer Kanaele, Answering Brief at 17, and the trial court found Defendant guilty of Harassment of Sergeant Cameron, not Officer Kanaele. Since Defendant was charged with

harassing Officer Kanaele, but said charges were not proved, she is protected by double jeopardy principles from being prosecuted again for the same offense.

Moreover, Defendant never objected at trial to the duplicitous charges contained in Count Two, and never requested a bill of particulars or an election by the State as to which charge in Count Two it wished to prosecute her on. Further, she has not claimed to be surprised in any way by the variance.

Under the circumstances, we conclude that the variance has in no way affected Defendant's substantial rights and thus amounts to harmless error.

A similar result was reached by the United States Supreme Court in *Bennett v. United States*, 227 U.S. 333, 33 S. Ct. 288, 57 L. Ed. 531 (1913). The defendant in *Bennett* was indicted for transporting two women, contrary to the white slave act of June 25, 1910. The proof established, however, that the defendant transported only one woman. In holding that no fatal variance was committed, the Supreme Court said: "This again is a contention which has more of technicality than substance. How what the defendant did not do can be considered material description of what she did do is not easy to imagine." 227 U.S. at 338–339.

## III.

Defendant finally argues that the evidence at trial was insufficient to convict her of Harassment.

On appeal of a conviction after a bench trial, the test to ascertain the legal sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the State, there is substantial evidence to support the conclusion of the trier of fact. *State v. Hopkins*, 60 Haw. 540, 592 P.2d 810 (1979). As long as substantial evidence exists, the lower court's determination will be upheld. *State v. Halmos*, 70 Haw. 14, 755 P.2d 1226 (1988). Evaluated

against this standard, there is substantial evidence to support the Harassment conviction of Defendant.

According to the trial testimony of Officer Clarence Kenui (Kenui), on May 31, 1991, he and two other officers, Officer Leighton Kanaele (Kanaele) and Sergeant Gerald Matsunagi (Matsunagi), responded to a Disorderly Conduct complaint. All three officers were dressed in civilian clothes as they were operating undercover at the time. When Kenui arrived, he observed two uniformed officers, Officer Gregory Moniz (Moniz) and Sergeant Don Cameron (Cameron), already at the scene, and observed at least two police cars parked in the driveway fronting the residence.

The testimony of Kenui, Cameron, Matsunagi, and Kanaele indicates that as the officers approached the residence, a "ruckus" could be heard occurring from within. Kenui noticed a black male in the vicinity of the driveway to the residence. The male, who exited the house when the officers drove up, wanted to know why the officers were there. The officers explained to the male that they were answering a Disorderly Conduct complaint.

As Kenui approached the residence, he was shoved by the male, later identified as Mr. William Moore (Moore), whom Kenui then arrested. While Kenui was arresting and handcuffing Moore, Defendant exited the house, yelling and screaming, and grabbed at Kenui from the back of his shoulders to get him away from Moore. According to Cameron's testimony, he told Defendant that Moore was being placed under arrest, and that she should "just back off, so the arrest could be effected." October 15, 1991 Transcript at 27.

Matsunagi testified that while he was assisting Kenui in handcuffing Moore, he saw Defendant grab Kenui "from the back of his shoulders" at which time Matsunagi "pushed her off" and told her "police, just let us go; we are doing our job." *Id.* at 39. Matsunagi further testified:

And then she came back at which time Officer Kanaele, I believe, started physically pushing her away and telling her, we're police and things of that nature.

> And then she came back again and Sergeant Cameron, I believe, grabbed her and tried to tell her to leave, at which time she pushed Sergeant Cameron away.

*Id.* Kanaele testified that he verbally told Defendant approximately three times to stay away, but she kept persisting, at which time Cameron pushed her away, and she pushed Cameron, who took her down in an arm lock, and handcuffed and arrested her. *Id.* at 57.

There is thus substantial evidence to support the trial court's finding that "the charge of harassment has been established beyond a reasonable doubt in that [Defendant] with intent to harass[,] annoy or alarm Sergeant Cameron did strike, shove; in other words, touched Sergeant Cameron and did subject Sergeant Cameron to offensive physical contact." *Id.* at 84.

## CONCLUSION

Accordingly, we affirm the Judgment and Sentence of the District Court of the Second Circuit, filed on October 15, 1991.

*Dale K. Mattice*, Deputy Public Defender, on the briefs for defendant–appellant.

*Mark R. Simonds*, Deputy Prosecuting Attorney, County of Maui, on the brief for plaintiff–appellee.